Erica J. Van Loon (CA Bar No. 227712)
evanloon@nixonpeabody.com
Yun Kim (CA Bar No. 287596)
ykim@nixonpeabody.com
NIXON PEABODY LLP
300 S. Grand Avenue, Suite 4100
Los Angeles, CA 90071-3151
Tel: 213-629-6031
Fax: 213-629-6001

*Attorneys for Plaintiff*
KIGAN INDUSTRY CO. LTD

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KIGAN INDUSTRY CO. LTD.,<br>Plaintiff,<br>vs.<br>JEFF TSENG, JIANWEI LI, VINCENT BORGES, EUGENE ESTABROOK, and SUHUA QIN,<br>Defendants. | Case No. 2:25-cv-03792-CAS (JDEx)<br><br>**PLAINTIFF KIGAN INDUSTRY CO. LTD'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Date: November 17, 2025<br>Time: 10:00 AM<br>Location: Courtroom 8D |

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1
II. STATEMENT OF FACTS AND PROCEDURAL HISTORY .......... 2
III. LEGAL STANDARD .......... 3
A. Kigan Sufficiently Pleads its Claim for Breach of Contract and Has Adequately Pled Consideration .......... 3
B. Kigan Sufficiently Pleads its Fraud Claim .......... 5
C. Kigan Sufficiently Pleads a Claim for Promissory Estoppel, in the Alternative .......... 8
D. Kigan Sufficiently Pleads a Claim for Breach of Implied Good Faith and Fair Dealing .......... 10
E. Kigan Sufficiently Pleads a Claim for Unjust Enrichment .......... 10
F. Kigan Sufficiently Pleads a Claim for False Advertising .......... 11
G. Kigan Sufficiently Pleads a Claim for Unfair Business Practices and Sufficiently Establishes Alter Ego Liability over the Individual Defendants .......... 13
IV. CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 3

*Aviation Contractor Employees, Inc. v. United States*,
945 F.2d 1568 (Fed. Cir. 1991) .......... 9

*Carma Devs. (Cal.), Inc. v. Marathon Dev. California, Inc.*,
2 Cal. 4th 350 (1992) .......... 10

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
20 Cal.4th 163 (1999) .......... 13, 14

*Doe v. Unocal Corp.*,
248 F.3d 915 (9th Cir. 2001) .......... 5

*ESG Capital Partners, LP v. Stratos*,
828 F.3d 1023 (9th Cir. 2016) .......... 10

*EVIG, LLC v. Natures Nutra Co.*,
685 F. Supp. 3d 991 (D. Nev. 2023) .......... 12

*Gerritsen v. Warner Bros. Ent. Inc.*,
116 F. Supp. 3d 1104 (C.D. Cal. 2015) .......... 15

*In re GlenFed, Inc. Sec. Litig.*,
42 F.3d 1541 (9th Cir. 1994) .......... 7

*Glen Holly Entertainment, Inc. v. Tektronix Inc.*,
343 F.3d 1000 (9th Cir. 2003) .......... 9

*Healy v. Brewster*,
251 Cal.App.2d 541 (1967) .......... 3

*Hinojos v. Kohl's Corp.*,
718 F.3d 1098 (9th Cir. 2013) .......... 13

*In-N-Out Burgers v. Smashburger IP Holder LLC*,
No. SACV 17-1474 JVS (DFMx), 2019 WL 1431904 (C.D. Cal. Feb. 6, 2019) .......... 13

*Kwikset Corp. v. Superior Court.*,
51 Cal. 4th 310 (2011) .................... 14

*Laks v. Coast Fed. Sav. & Loan Assn.*,
60 Cal. App. 3d 885 (1976) .................... 8

*Locke v. Warner Bros., Inc.*,
57 Cal. App. 4th 354 (1997) .................... 7

*Luxul Tech. Inc. v. NectarLux, LLC*,
78 F. Supp. 3d 1156 (N.D. Cal. 2015) .................... 14

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) .................... 3

*MWS Wire Indus., Inc. v. California Fine Wire Co.*,
797 F.2d 799 (9th Cir. 1986) .................... 3

*Natl. Rural Telecomm. Co-op. v. DIRECTV, Inc.*,
319 F. Supp. 2d 1059 (C.D. Cal. 2003) .................... 14

*Odom v. Microsoft Corp.*,
486 F.3d 541 (9th Cir.2007) .................... 7

*Robinson Helicopter v. Dana Corp.*,
34 Cal. 4th 979 (2004) .................... 8

*In re Schwarzkopf*,
626 F.3d 1032 (9th Cir. 2010) .................... 5

*SK Networks Co. Ltd. v. Bentley Forbes Holdings, LLC*,
No. CV 12-08997 MMM, 2013 WL 12131715 (C.D. Cal. Nov. 7, 2013) .................... 4

*Smith v. Allstate Ins. Co.*,
160 F. Supp. 2d 1150 (S.D. Cal. 2001) .................... 7

*Smith v. State Farm*,
93 Cal.App.4th 700 (2001) .................... 14

*Southland Sod Farms v. Stover Seed Co.*,
108 F.3d 1134 .................... 13

*Spotlight Ticket Managment, Inc. v. Concierge Live, LLC*,
No. 2:24-CV-00859-WLH-SSC, 2025 WL 235429 (C.D. Cal. Jan. 2, 2025) ........ 13

*Tarmann v. State Farm Mut. Auto. Ins. Co.*,
2 Cal. App. 4th 153 (1991) ........ 6

*Tenzer v. Superscope, Inc.*,
39 Cal. 3d 18 (1985) ........ 6, 7

*Veera v. Banana Republic, LLC*,
6 Cal. App. 5th 907 (2016) ........ 14

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ........ 5

*Waits v. Frito-Lay, Inc.*,
978 F.2d 1093 (9th Cir. 1992) ........ 12

*Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.*,
178 F. Supp. 2d 1099 (C.D. Cal. 2001) ........ 14

**Statutes and Other Authorities**

15 U.S.C. § 1125(a)(1)(B) ........ 11

5 Witkin, Cal. Procedure (3d ed. 1986) Pleading, § 670 ........ 6

Cal. Bus. & Prof. Code §§ 17200, 17204, *et seq* ........ 13

Cal. Civ. Code § 1605 ........ 4

California's Unfair Competition Law ........ 13

Federal Rule of Civil Procedure 9(b) ........ 5

Lanham Act ........ 2, 11, 13, 14

Restatement (Second) of Contracts § 71 ........ 4

Restatement (Second) of Contracts § 74 ........ 1, 3, 9

Restatement (Second) of Contracts § 205 ........ 10

Plaintiff Kigan Industry Co. Ltd. ("Plaintiff" or "Kigan"), hereby opposes the Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) filed by Defendants, Jeff Tseng, Jianwei Li, Vincent Borges, Eugene Estabrook, and Shuhua Qin (collectively, the "Defendants" or "Phenix").

## I. INTRODUCTION

Defendants' renewed Rule 12(b)(6) motion should be denied in its entirety as it is untimely and simply rehashes arguments the Court already mooted when it granted Kigan leave to file the Second Amended Complaint ("SAC") on September 25, 2025. (Dkt. 28.) Further, Defendants filed their second motion to dismiss several days after the deadline to respond, without seeking an extension to do so, which is basis alone to deny it.

On the merits, this motion should be denied because Plaintiff has sufficiently pled valid claims for relief. Defendants' motion boils down to three main arguments that are repackaged to attack several of Kigan's claims. First, Defendants incorrectly argue that Kigan's breach of contract claim lacks consideration because Kigan dismissed its design patent infringement claim. However, it is well-settled law that a promise to forbear filing legal claims, even if later dismissed, constitutes sufficient consideration so long as the promise was made in good faith at the time it was made. *See* Restatement (Second) of Contracts § 74. In any event, the SAC alleges another entirely independent ground for consideration beyond forbearance: Kigan developed bespoke samples in exchange for Defendants' promise to pay.

Second, the fraud claim is pled with sufficient particularity. The SAC identifies the who/what/when/where/how and identifies several contemporaneous emails (including Defendants' damning statements to "appease" Kigan just to get them off their back) that show Defendants made false assurances to continue doing business with Kigan without a present intent to perform.

Third, Defendants continued display of Kigan's hook keeper products on its website while simultaneously selling non-Kigan components to consumers, together with their repeated false promises to remove Kigan's product images, constitutes false designation of origin and false advertising under the Lanham Act, as well as unfair competition under the UCL. Defendants' website misrepresents to consumers that their fishing rods contain Kigan hook keepers, when they do not and, to date, such false and misleading representations appear on Defendants website.

For these reasons, and as more fully detailed below, the Court should deny Defendants' motion in full.

## II. STATEMENT OF FACTS AND PROCEDURAL HISTORY

On April 29, 2025, Kigan filed its Complaint against Phenix Rods & Accessories ("Phenix")—then believed to be an active corporation—in the United States District Court for the Central District of California, asserting claims for, among other things, design patent infringement. (*See* Dkt. 1.) On September 5, 2025, Kigan voluntarily dismissed its design patent infringement claims. (Dkt. 21.)

On September 15, 2025, Kigan requested leave to file its Second Amended Complaint, submitted with its Opposition to Defendants' first Motion to Dismiss. Kigan's Second Amended Complaint clarified and refined its claims further and amended the alleged deficiencies addressed in Defendants' first Motion to Dismiss. (Dkt. 25.)

On September 25, 2025, the Court granted Kigan's request for leave to file its Second Amended Complaint and denied Defendants' first Motion to Dismiss as moot. (Dkt. 28.) Defendants' response to the SAC was due on October 9, 2025. On October 14, 2025, several days late, Defendants brought a renewed motion to dismiss Plaintiff's Second Amended Complaint, which raises many of the same arguments already mooted by the Second Amended Complaint. (Dkt. 30.)

//

## III. LEGAL STANDARD

For a motion to dismiss pursuant to FRCP 12(b)(6), a complaint must allege sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In deciding a motion to dismiss for failure to state a claim, the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030-31 (9th Cir. 2008) (quotation marks and citations omitted). The court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Id.* at 1031.

### A. Kigan Sufficiently Pleads its Claim for Breach of Contract and Has Adequately Pled Consideration

Defendants argue, with no legal authority, that because Plaintiff voluntarily dismissed its design patent infringement claims, its breach of contract claim lacks consideration. (Mot. At 8.) Not so. Courts recognize that good-faith forbearance from asserting a claim is valid consideration, even if such claim is later deemed invalid or settled; the bargain is judged as it appeared at the time it was made. *See MWS Wire Indus., Inc. v. California Fine Wire Co.*, 797 F.2d 799, 802 (9th Cir. 1986) ("Under California law, '[f]orbearance to make use of some legal remedy is sufficient consideration for a promise. Also, forbearance to press a claim or a promise of such forbearance, may be a sufficient consideration even though the claim is wholly ill founded.'") (quoting *Healy v. Brewster*, 251 Cal.App.2d 541, 551 (1967)); Restatement (Second) of Contracts § 74 [forbearance to assert a claim which is doubtful or believed in good faith to be valid is consideration].

The SAC alleges that, in March–April 2022, Kigan believed in good faith that its design patent claim was viable and refrained from filing suit while Defendants requested—and Kigan built—custom samples that would be followed by annual orders of much larger volumes. (*See generally* SAC.) Thus, the promise

to forbear filing legal claims, even if later dismissed, constitutes sufficient consideration so long as the promise was made in good faith.

Furthermore, as a separate and independent basis for consideration of the parties' contracts, the SAC pleads classic **bargained-for exchange**. The parties' written agreement sets out essential terms (annual volumes of 3,000–9,000 sets and development of new-series products). The parties negotiated and fixed the monetary consideration—i.e., unit pricing—Defendants asked for the cost "per 1000 pcs.", Kigan provided such pricing, and Defendants submitted an order. [SAC ¶¶ 20, 26, 56, 58, 70, 71, 79.] Kigan then continued development at those quoted prices and Defendants accepted delivery of the product samples. Defendants' promise to pay those amounts (money) in exchange for Kigan's performance is quintessential bargained-for consideration. *See, e.g., SK Networks Co. Ltd. v. Bentley Forbes Holdings, LLC*, No. CV 12-08997 MMM (SHx), 2013 WL 12131715, at *13 (C.D. Cal. Nov. 7, 2013) ("(1) To constitute consideration, a performance or a return promise must be bargained for. (2) A performance or return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise.") (quoting Restatement (Second) of Contracts § 71); Cal. Civ. Code § 1605 (defining "good consideration").

The SAC recites several facts that further show a mutual agreement was made. On May 7, 2023, Kigan notified Defendants that they had completed two developed samples and on October 7, 2023, got confirmation to continue working on the remaining six samples. [SAC ¶¶ 38, 44.] Defendants acknowledged that the parties "have an agreement," and again reaffirmed such agreement on July 10, 2023, stating that they had "come to a mutual agreement to avoid any issues of a previous hook keeper." [SAC ¶¶ 26, 40, 56, 71.] Such assurances further confirm the parties' mutual assent and intent to be bound by the terms of the agreement. Relying on Defendants' assurances, Kigan continued developing models on Defendants' behalf. [*Id.* ¶¶ 27, 31, 38, 73, 74, 80, 81, 90.]

The SAC further clarifies and expands the factual allegations concerning the March 2022 email exchange that forms the basis of the breach of contract claim, and expressly alleges that the individual Defendants—acting as Equityholders of Phenix and with authority to bind the company—entered into a written agreement with Kigan. [SAC ¶¶ 51, 52, 56, 57 94.]

Kigan's alter ego theory is also sufficiently pled: (1) the owners of Phenix are on the email chain, representing a unity of interest and ownership between each individual defendant and the company, the defendants made representations as authorized agents acting on behalf of the company; and (2) failure to disregard their separate identities would result in fraud or injustice. [SAC ¶¶ 51, 52, 56, 57, 94]; *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001); *see also In re Schwarzkopf*, 626 F.3d 1032, 1038 (9th Cir. 2010) (finding that equitable ownership in entity conferred alter ego liability).

In short, the SAC alleges a valid written contract supported by consideration and mutual assent, as well as the individual defendants' authority (and, alternatively, alter-ego liability) to obligate Phenix.

### B. Kigan Sufficiently Pleads its Fraud Claim

Kigan has sufficiently pled its claim for fraud. The SAC satisfies Federal Rule of Civil Procedure 9(b) by identifying *who* at Phenix made the assurances [*Id.* ¶¶ 17-24, 28-30, 32, 33, 36, 40, 46, 51], *what* was promised (ongoing and follow-on purchase orders beyond the initial 3,000 guide sets [*Id.* ¶¶ 26, 28, 70], *when and where* the statements were made (communications between March–April 2022) [*Id.* ¶¶ 26, 28, 70], *how* they were communicated (email threads) [*Id.* ¶¶ 51, 57, 67, 70], and *why* they were false (internal emails contemporaneously describing a plan to "appease" Kigan to forestall legal action while having no genuine intent to make the promised continuing purchases) [*Id.* ¶¶ 19, 24, 67]. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (the "who, what, when, where, and how" of the misconduct must be alleged).

Defendants argue that "a promise of future conduct is actionable as fraud only if made without a present intent to perform," and that "something more than nonperformance" is required. (Mot. at 9.) While that is generally correct, Kigan *has* adequately pled that "something more" in laying out its claim for promissory fraud, i.e., that Defendants' assurances to make continuing purchases (including blanks and finished rods) were false at the time they were made, and does not merely point to the fact that they later failed to perform. A false promise is actionable when plaintiff can show facts pertaining to the promisor's then-existing intent to never perform the deal. *See Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 158 (1991) (false promise is actionable because a promise "implies a representation of intent to perform" at the time it is made); 5 Witkin, Cal. Procedure (3d ed. 1986) Pleading, § 670 ("A false promise is actionable on the theory that a promise implies an intention to perform, that intention to perform or not to perform is a state of mind, and that misrepresentation of such a state of mind is a misrepresentation of fact. The allegation of a promise (which implies a representation of intention to perform) is the equivalent of the ordinary allegation of a representation of fact.")

Defendants' reliance on *Tenzer* to argue that a failure to perform is insufficient to rise to the level of fraud, is wholly misplaced. *Tenzer* involved an oral commission agreement barred by the statute of frauds and a plaintiff who largely sought to convert a single oral agreement for a "finders fee" into a fraud claim. By contrast, Kigan pleads far more facts than a mere unenforceable promise: contemporaneous emails show that Defendants admitted that they fraudulently induced or "appease[ed]" Kigan, in order to forestall enforcement of claims against them. [SAC ¶¶ 19, 24, 67.]

Here, Defendants made years-long assurances to Kigan of continuing orders specifically to induce Kigan's forbearance of bringing legal claims and such fraudulent inducement caused Kigan to pay for costly development work that Defendants never intended to purchase. Defendants' misconduct is consistent with

fraudulent inducement. Accordingly, *Tenzer* does not foreclose Kigan's fraud claim; if anything, *Tenzer* underscores that where there is evidence of contemporaneous intent not to perform, the statute of frauds is no shield to tort liability. *Tenzer v. Superscope, Inc.*, 39 Cal. 3d 18, 30 (1985) ("To be sure, fraudulent intent must often be established by circumstantial evidence… cases in which fraudulent intent has been inferred from such circumstances as defendant's insolvency, his hasty repudiation of the promise, his failure even to attempt performance, or **his continued assurances after it was clear he would not perform**.") (emphasis added).

Defendants also argue that Phenix's partial performance (the initial 3,000-unit order) defeats any inference of fraudulent intent. Not so. The Ninth Circuit definitively rejected the notion that partial performance neutralizes a plausible inference that the broader assurance was false when made; intent is judged from the entire course of conduct and contemporaneous documents, and competing inferences go to the jury. *See In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (*en banc*) (requiring that the complaint state "what is false or misleading about a statement, and why it is false"), *superseded by statute on other grounds*, *as recognized in Ronconi v. Larkin*, 253 F.3d 423, 429 n.6 (9th Cir. 2001); *Odom v. Microsoft Corp.,* 486 F.3d 541, 554 (9th Cir.2007) ("While the factual circumstances of the fraud itself must be alleged with particularity, the state of mind—or scienter—of the defendants may be alleged generally.").

Here, Kigan has sufficiently identified statements that show Defendants never had an intent to carry out their promises to Kigan, which was later corroborated by their actions when they did in fact, not pay. *Smith v. Allstate Ins. Co.*, 160 F. Supp. 2d 1150, 1152 (S.D. Cal. 2001) ("Although failure to perform a contract does not constitute fraud, a promise made without intention to perform can be actionable fraud." [citing *Locke v. Warner Bros., Inc.,* 57 Cal. App. 4th 354, 367 (1997)].) Kigan alleges in the SAC that damning internal emails by Defendants—mistakenly

leaving Kigan's representative on-thread—showed Defendants' goal from the get-go was to "appease" Kigan long enough to "back [them] off" from pursuing legal action without any genuine intent to purchase Kigan's products. [SAC ¶¶ 19, 24, 67.] Defendants' one-off order made for the purpose to appease Kigan and buy time against it bringing suit is precisely fraudulent inducement. Defendants' further false promise of an ongoing relationship and an annual order quantity from Kigan of approximately "300 to 400 pieces per model, 8 to 10 models, totaling 3,000 to 4,000 pieces per year" as requested by Defendant Estabrook on June 8, 2022 [*Id.* ¶ 32], was false at the time Defendants made it. Defendants had no intention of following through on this false promise and did not.

Defendants' claim that Kigan's fraud theory merely repackages a contract dispute is also meritless. The March 8, 2022, email clearly shows Defendants' scheme to place continuing orders to "appease" and secure Kigan's restraint from pursuing claims and to elicit extensive development work and such allegations rise to the level of fraudulent inducement. [SAC ¶¶ 19, 24, 67.] Courts allow such claims where, as here, the fraud is distinct from a simple failure to perform contractual duties. *See Robinson Helicopter v. Dana Corp.,* 34 Cal. 4th 979, 991 (2004) ("We hold that the economic loss rule does not bar [plaintiff's] fraud and intentional misrepresentation claims because they were independent of [defendant's] breach of contract.").

### C. Kigan Sufficiently Pleads a Claim for Promissory Estoppel, in the Alternative

Kigan properly alleges promissory estoppel as an alternative to its breach of contract claim. Under California law, the elements of a claim for promissory estoppel are: "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) his reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *Laks v. Coast Fed. Sav. & Loan Assn.,* 60 Cal. App. 3d 885, 890 (1976).

A promise that is vague, general, or of indeterminate application is not enforceable. To be enforceable, the promise must be sufficiently definite that a court can determine the scope of the duty and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages. *Glen Holly Entertainment, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1017 (9th Cir. 2003).

Here, Defendants' promise was clear and unambiguous. Defendants unequivocally placed follow-on purchase orders from Kigan beyond the initial 3,000 guide sets, in exchange for Kigan's forbearance to pursue legal claims. [SAC ¶¶ 26, 56, 58, 61, 70, 73, 79.]

Kigan forewent immediate legal action and invested substantial resources (engineering samples, production capacity) in response to Defendants' assurances to buy further products. [SAC ¶¶ 38, 44, 61, 73, 80-83.] Defendants argue, with no legal authority, that Kigan's forbearance from asserting claims was "illusory" or "unreasonable." (Mot. at 11.) However, courts routinely recognize that forbearance of a legal right can represent consideration to support an agreement, provided that the forbearing party believes in good faith at the time it was made, that its claim or defense is valid. *See* Restatement (Second) of Contracts § 74(1) [recognizing estoppel "even though the invalidity later becomes clear, the bargain is to be judged as it appeared to the parties at the time."]; *see also Aviation Contractor Employees, Inc. v. United States*, 945 F.2d 1568, 1574 (Fed. Cir. 1991) [forbearance of a right in "honest dispute" can represent consideration to support a contract].

Further, Defendants' "settled later = reasonableness defeated" argument has no basis on a motion to dismiss. Reasonableness and foreseeability of reliance are quintessential fact questions for the jury; later developments (e.g., partial performance or interim settlements with others) do not retroactively erase earlier, induced reliance.

### D. Kigan Sufficiently Pleads a Claim for Breach of Implied Good Faith and Fair Dealing

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Carma Devs. (Cal.), Inc. v. Marathon Dev. California, Inc.*, 2 Cal. 4th 342, 371 (1992) (quoting Restatement (Second) of Contracts § 205).

Defendants merely repeat their arguments that there was no consideration to support an enforceable contract. However, Kigan's implied breach claim is independent of the breach of contract claim. Kigan sufficiently alleges that Defendants unfairly purported to comply with the contract and then did not, e.g., by stringing Kigan along with "appease and delay" communications while leveraging Kigan's development work and forbearance of Kigan's good-faith legal claims and working in concert to withhold payment of the custom samples and intentionally failing to move forward with the promised orders. [SAC ¶¶ 19, 24, 67.]

Defendants' argument that Kigan acted in bad faith because it later voluntarily withdrew its patent infringement claim makes no legal sense and is irrelevant to this claim. Plaintiff's prudent evaluation and decision to dutifully truncate its claims to focus on its core allegations, is the opposite of a bad-faith action and Defendants' bullying of Plaintiff for asserting certain claims over others should not be countenanced.

### E. Kigan Sufficiently Pleads a Claim for Unjust Enrichment

Defendants' argument that "unjust enrichment isn't a claim" and that "quasi-contract fails for lack of consideration" is legally incorrect.

While consideration is a contract concept, quasi-contract sounds in equity and aims to prevent unjust enrichment where no enforceable contract remedy lies. *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038–39 (9th Cir. 2016) (recognizing restitution/unjust-enrichment theory to recover benefits wrongfully retained). The focus of this claim is not whether a bilateral contract was fully

formed, but whether Phenix may retain benefits from Kigan's bespoke development and testing efforts without payment.

Kigan performed its duties under the agreement, it completed the development of two samples, MF711-4 and USB-C 790H-4, and on May 7, 2023, requested payment owed by Defendants. [SAC ¶ 38.] While awaiting a response and checking in with Phenix for feedback for months, Kigan continued working on and nearly completed the remaining six samples for Defendants: Redeye BR3-S 720M, Ultra MBX 700XH, Ultra MBX-S DROPSHOT 700MH, Ultra Swimbait 711 MH, Mirage 711-1, and Mirage 561-1. [*Id.* ¶¶ 39, 48, 71.] These samples were developed as part of the new series that Kigan and Phenix had repeatedly agreed upon. Kigan expended tens of thousands of dollars in developing custom, made-to-order samples for Phenix that Phenix had no intention of ever purchasing. [*Id.*]

Here, Phenix received concrete benefits and has yet to pay for them. In reliance on Phenix's directives and the parties' agreed development plan, Kigan completed two custom samples—MF711-4 and USB-C 790H-4—scheduled for delivery on March 26, 2024, and invoiced Phenix for those units. Kigan also nearly completed six additional made-to-order builds as part of the new series that the parties repeatedly discussed and agreed upon. [SAC ¶¶ 38, 48, 71.]

Kigan expended tens of thousands of dollars in development costs for these Phenix-specific builds (which cannot be resold or repurposed for other customers), yet Phenix never paid Kigan for any of this work. [SAC ¶¶ 48, 81-82.] Kigan is entitled to restitution of the expenses it incurred.

**F. Kigan Sufficiently Pleads a Claim for False Advertising**

A false-advertising claim under the Lanham Act makes it unlawful to use, "in commercial advertising or promotion," any false or misleading statement of fact that misrepresents the "nature, characteristics, [or] qualities" of goods or services. 15 U.S.C. § 1125(a)(1)(B). Kigan has plausibly alleged facts that, if accepted as true, state claims under both § 1125(a)(1)(A) (false designation/passing off) and §

1125(a)(1)(B) (false advertising). In short, Phenix kept images of Kigan's products on its website when it was not, in fact, selling Kigan's products. This is *de facto* false advertising. Phenix's scienter is further supported by its repeated agreements to remove Kigan's product images from its website—and its failure to do so—which shows Defendants' knowledge that the listings on its site were inaccurate. Furthermore, the misleading advertising is made with scienter, because Defendants agreed to remove those pictures from its website yet have not done so.

For a false association claim under subsection A, the focus of the claim is on whether the trade dress (or unregistered mark) causes confusion by leading consumers to think that two products from different sources actually come from the same source. The question is whether Phenix's use of Kigan's component imagery and product "look" is likely to cause consumers to believe Phenix's rods are affiliated with Kigan components when they are not. *See Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1108 (9th Cir. 1992) (false association/endorsement turns on likelihood of confusion). Here, Phenix's webpages depict rods featuring Kigan hook keepers, while the goods Phenix actually sells are not Kigan products, but rather Essex copycat parts. [SAC ¶¶ 15, 26, 33, 47, 49, 90, 95, 96, 97.] Such false advertising creates a likelihood of confusion amongst consumers as to the origin of the products being sold and supports a § 1125(a)(1)(A) claim.

As for a false advertising claim originating under subsection B, "the question is not confusion of source, but confusion as to a competing product's attributes." *EVIG, LLC v. Natures Nutra Co.*, 685 F. Supp. 3d 991, 997 (D. Nev. 2023). "Put another way, false advertising claims focus on whether a defendant has made some false statement in advertising about the product that fundamentally misrepresents its qualities." *Id.* Here, Defendant knowingly posted pictures of products showing Kigan's hook keepers on its website, yet marketed and described the fishing rods as having an "Essex hook keeper," a cheaper, copy-cat product. [SAC ¶¶ 15, 26, 33, 47, 49, 90, 95, 96, 97.] As the depictions are literally false, deception is presumed.

*See Spotlight Ticket Managment, Inc. v. Concierge Live, LLC*, No. 2:24-CV-00859-WLH-SSC, 2025 WL 235429, at *5 (C.D. Cal. Jan. 2, 2025) ("For literally false statements, which the Court finds Plaintiff sufficiently alleged here, Plaintiff need not establish 'evidence of consumer deception' as 'actual deception is presumed.'"). Moreover, such depictions are materially likely to influence purchasers choosing rods based on component quality. *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (defining "material" for purposes of Lanham Act § 43(a) claim as "likely to influence the purchasing decision"); *In-N-Out Burgers v. Smashburger IP Holder LLC*, No. SACV 17-1474 JVS (DFMx), 2019 WL 1431904, at *7 (C.D. Cal. Feb. 6, 2019) ("Materiality can be shown where defendants misrepresent 'an inherent quality or characteristic' of a product").

### G. Kigan Sufficiently Pleads a Claim for Unfair Business Practices and Sufficiently Establishes Alter Ego Liability over the Individual Defendants

California's Unfair Competition Law ("UCL") prohibits any "unlawful, unfair or fraudulent" business act or practice. Cal. Bus. & Prof. Code § 17200. The statute is "sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,* 20 Cal. 4th 163, 180 (1999). Kigan adequately alleges economic injury (expending resources into sample development, diverted sales, reputational harm), which confers UCL standing. *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104–06 (9th Cir. 2013) (economic injury confers standing).

Defendants' suggestion that Kigan's UCL claim fails because "the individual defendants and Kigan are not competitors" is an invented requirement that is nowhere in the language of the statute. The UCL is not limited to competitor suits; it reaches any unlawful, unfair, or fraudulent business practice causing economic injury. Cal. Bus. & Prof. Code §§ 17200, 17204, *et seq*.

In fact, the *Cel-Tech* case upon which Defendant relies, does not state a

competitor requirement—it merely limited its holding to competitor lawsuits. *See Natl. Rural Telecomm. Co-op. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059, 1075 (C.D. Cal. 2003) ["The test annunciated in *Cel–Tech,* however, applies only to cases between direct competitors, not all 'commercial' cases."]; *Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F. Supp. 2d 1099, 1118 n.13 (C.D. Cal. 2001). ["the *Cel–Tech* test was expressly limited to actions between competitors."); *see also Smith v. State Farm,* 93 Cal.App.4th 700, 720 n. 23 (2001) (stating that "[t]he [*Cel–Tech*] court made such comment, however, in the context of a dispute between *competitors.* Indeed, the *Cel–Tech* court concluded by articulating a specific and restrictive definition of 'unfair' that was to be applied whenever a plaintiff claimed to have suffered injury '*from a direct competitor's* "unfair" act or practice…'") (emphasis in original).

The question of standing instead turns on causation and actual injury. *See, e.g.*, *Veera v. Banana Republic, LLC*, 6 Cal. App. 5th 907, 916 (2016) ("in order to establish standing under the UCL and the FAL, a private party must "(1) establish ... injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." [quoting *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011)].)

In any event, Defendants' argument is a strawman because Phenix and Kigan are direct competitors. [SAC ¶¶ 25, 95, 105.] Kigan alleges predicate misconduct (including Lanham Act false designation/advertising) that supports UCL liability under the unlawful and fraudulent prongs. *See, e.g., Luxul Tech. Inc. v. NectarLux, LLC,* 78 F. Supp. 3d 1156, 1174 (N.D. Cal. 2015) (Lanham Act false advertising can serve as UCL predicate; deceptive competitor conduct actionable as "unfair".)

As earlier explained in Section B, Kigan also sufficiently pleads that the individual defendants are liable under *alter ego* theory. The SAC alleges that the individual defendants dominated and controlled Phenix's operations, directed the

challenged marketing and purchasing decisions, and used the entity to perpetrate the deceptive practices at issue. [SAC ¶¶ 51, 52, 56, 57 94.] Kigan has adequately pled both unity of interest and the inequitable result prongs at this stage. *See Gerritsen v. Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1136–39 (C.D. Cal. 2015) (alter-ego allegations sufficient where plaintiff pleads control, commingling, and use of the entity to perpetrate wrongdoing).

Other unfair and deceptive acts and practices are discussed more fully above and in the SAC. [*See e.g.* SAC ¶¶ 19, 24, 60, 61, 67, 72, 73, 85-87, 93, 95, 96, 105.] However, Defendants' misleading advertising is further compounded by the fact that Defendants promised Kigan multiple times, beginning as early as March 2022 and again in July 2022, that they had removed the Essex-branded hook keeper from their products, and advertisements. [SAC ¶¶ 24, 49, 69, 86.] However, this was untrue, as Defendants offered and continue to offer copycat items for sale on their website.

## IV. CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' Motion to Dismiss in its entirety.

Date: October 27, 2025 NIXON PEABODY LLP

/s/ Erica J. Van Loon
Erica J. Van Loon
Yun Kim
*Attorneys for Plaintiff*
Kigan Industry Co. Ltd.

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2025, I electronically filed the foregoing **PLAINTIFF KIGAN INDUSTRY CO. LTD'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record registered to receive electronic service in this action.

Dated: October 27, 2025

/s/ Erica J. Van Loon
Erica J. Van Loon